# IN THE UNITED STATES DISTRICT COURT
# EASTERN DIVISION OF MICHIGAN
# SOUTHERN DIVISION

STEVEN GILLMAN, as Personal
Representative of the ESTATE OF
MEGAN ANN MILLER, Deceased,                     Case No.
                                                Hon.
    Plaintiff,

v

CITY OF TROY and JULIE GREEN-HERNANDEZ,

    Defendants.

---

VEN R. JOHNSON (P39219)
JEFFREY T. STEWART (P24138)
DAVID S. SHIENER (P78608)
**JOHNSON LAW, PLC**
Attorneys for Plaintiff
535 Griswold, Suite 2632
Detroit, Michigan 48226
(313) 324-8300
dshiener@venjohnsonlaw.com

---

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

---

    The undersigned hereby certifies that there is no other action pending in this Court or any other court between the same parties arising from the same transaction or occurrence, nor has such an action been dismissed after being assigned to a judge.

        /s/    *David S. Shiener*
                David S. Shiener

NOW COMES Plaintiff STEVEN GILLMAN, as Personal Representative of the ESTATE OF MEGAN ANN MILLER, Deceased, and for his Complaint against the above-named Defendants, states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Steven Gillman was at all times relevant to this cause of action a resident of the City of Troy, County of Oakland, State of Michigan.

2. Plaintiff Steven Gillman is the duly appointed and qualified Personal Representative of the Estate of Megan Ann Miller, deceased.

3. Defendant City of Troy ("Troy") was at all times relevant to this cause of action a Michigan municipal corporation that is duly organized under the laws of the State of Michigan and carrying on governmental functions in the County of Oakland, State of Michigan.

4. Defendant Julie Green-Hernandez ("Green-Hernandez") at all times relevant to this cause of action was an employee of Defendant Troy through the City of Troy Police Department and was acting under the color of state law and in the course and scope of her employment.

5. Upon information and belief, Defendant Green-Hernandez was a resident of and/or conducted business in the County of Oakland, State of Michigan.

6. This Court has jurisdiction over the claims set forth herein that arise out of federal law pursuant to 28 U.S.C. § 1331 and has supplemental jurisdiction over the claims set forth herein that arise out of state law pursuant to 28 U.S.C. § 1367.

7. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), as this cause of action arises out of occurrences that took place within this District, in the County of Oakland.

## COMMON ALLEGATIONS

8. Plaintiff reincorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

9. On or around July 16, 2020, Megan Ann Miller ("Megan") was being sought by the Troy Police Special Investigation Unit ("Troy SIU") in connection with an alleged parole violation and for an interview related to her daughter's death that occurred on June 15, 2020.

10. Troy SIU detectives on or around July 16, 2020 located Megan in the area of Seven Mile Road and Gratiot in the city of Detroit, Michigan and arrested her and transported her to the City of Troy police department.

11. Megan arrived at the City of Troy police department at approximately 5:00 p.m. on July 16, 2020.

12. Upon her arrival at the City of Troy police department, Megan was processed by City of Troy Police Service Aides ("PSA"), who are uniformed, non-

sworn members of the police department who staff the lockup area at the City of Troy police department.

13. Shortly after her arrival at the City of Troy police department, Megan was interviewed by City of Troy police detective Kristine Schuler.

14. During the interview with detective Kristine Schuler, Megan informed detective Kristine Schuler that she was under the influence of heroin and cocaine, that she would likely experience withdrawals within a day, and that she had been using "a lot" in the last several days.

15. Following the interview with City of Troy police detective Kristine Schuler, Megan was taken to the lockup area at the City of Troy police department where she was to remain until she was picked up by the Michigan Department of Corrections on July 21, 2020.

16. On or around July 19, 2020, Megan was housed in cell F2 in the lockup area at the City of Troy police department.

17. On July 19, 2020, Megan had vomited multiple times while in her cell.

18. Defendant Green-Hernandez arrived at Megan's cell at approximately 12:43 p.m. and had a brief conversation with Megan.

19. Defendant Green-Hernandez returned to Megan's cell at approximately 12:45 p.m. and gave Megan some paper towel because she had seen that Megan had been vomiting.

20. Defendant Green-Hernandez at that time did not otherwise facilitate prompt and immediate medical attention to Megan and/or transport to a hospital.

21. Defendant Green-Hernandez at that time had knowledge that Megan was a medical risk due to the fact that she was vomiting and was required by Troy policies and procedures to conduct a physical observation of Megan as often as possible or at least once every 15 minutes.

22. It is well known that an inmate who is vomiting and who is a known drug user is at risk of a serious medical condition and/or requires immediate medical care.

23. Defendant Green-Hernandez at approximately 1:00 p.m. returned to Megan's cell and gave Megan some food and a bottle of juice.

24. Defendant Green-Hernandez did not return to conduct a physical observation of Megan for more than two hours despite the fact that she knew that Megan was a medical risk.

25. Megan on that day had consumed fentanyl that was provided to her from an unknown source.

26. Defendant Green-Hernandez at approximately 3:21 p.m. returned to Megan's cell and saw Megan to be incoherent and laying on the bedding of her cell face-up with her eyes open.

27. Defendant Green-Hernandez at that time did not facilitate prompt and immediate medical attention to Megan and/or transport to a hospital.

28. Defendant Green-Hernandez upon seeing Megan to be incoherent and laying on the bedding of her cell face-up with her eyes open summoned for PSA Steven Hirsch, who contacted emergency medical services.

29. Defendant Green-Hernandez, PSA Hirsch, and Sergeant Scott LaMilza then entered into Megan's cell and began CPR.

30. Defendant Green-Hernandez, PSA Hirsch, and Sergeant LaMilza while rendering aid to Megan utilized an AED device and administered to Megan two doses of Narcan.

31. Emergency medical personnel eventually arrived and the police personnel turned over Megan's care to emergency medical personnel.

32. Megan was taken to Beaumont Hospital – Troy, where she was pronounced dead.

33. An autopsy that was performed on July 20, 2020 revealed that the cause of Megan's death was fentanyl intoxication.

34. Megan was detained and did not have access to any source of fentanyl for several days prior to her death.

**COUNT I – DELIBERATE INDIFFERENCE**
**VIOLATION OF CONSTITUTIONAL RIGHTS UNDER THE EIGHTH**
**AND FOURTEENTH AMENDMENTS OF THE UNITED STATES**

6

## CONSTITUTION PURSUANT TO 42 U.S.C. § 1983 – DEFENDANT GREEN-HERNANDEZ

35. Plaintiff reincorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

36. Defendant Green-Hernandez at all times relevant to this cause of action was acting within the scope of her employment and under the color of state law.

37. Megan at all times relevant to this cause of action was afforded the constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution to be free from cruel and unusual punishments and to adequate and sufficient medical care and/or treatment such that her life would be preserved and she at all times would be free from needless unjustified and preventable pain, suffering, and deterioration of her health and well-being.

38. Megan while in the custody of the City of Troy police department suffered from a serious medical condition for which she had sufficiently serious medical needs and from which she faced a substantial risk of serious harm.

39. Defendant Green-Hernandez was aware of facts from which an inference could be drawn that Megan faced a substantial risk of serious harm due to her serious medical needs and did in fact draw that inference.

40. The specific policies and procedures of Troy and those of any reasonable law enforcement or detention personnel required that its officers and lockup personnel must be aware that intoxicated prisoners present an increased risk

for serious medical problems, including death, and that personnel need to be alert for indicators that a prisoner may be at risk to suffer a serious medical problem due to their intoxicated state, which includes vomiting.

41. Defendant Green-Hernandez had knowledge that Megan faced a substantial risk of serious harm because she was vomiting in her cell and did not facilitate prompt and immediate medical attention to Megan and/or transport to a hospital.

42. Defendant Green-Hernandez with knowledge of facts that Megan faced a substantial risk of serious harm failed to provide or facilitate prompt and immediate medical attention to Megan and/or transport to a hospital.

43. Defendant Green-Hernandez's actions and/or inactions as described above constitute deliberate indifference to Megan's serious medical needs in violation of her rights under the Eighth and Fourteenth Amendments to the United States Constitution.

44. The right to be free from deliberate indifference to serious medical needs was at all times relevant to this cause of action clearly established such that a reasonable official or officer in Defendant Green-Hernandez's position would have known and understood that her actions and/or inactions as described above violated Megan's constitutional rights.

45. Defendant Green-Hernandez is not entitled to qualified immunity.

46. As a direct and proximate result of the deliberate indifference as described above, Megan suffered damages, both economic and non-economic, severe physical, psychological, emotional injuries, and ultimately death, and those damages include, but are not limited to, the following:

    a. Physical pain and suffering;

    b. Mental anguish;

    c. Fright and shock;

    d. Denial of social pleasure and enjoyments;

    e. Embarrassment, humiliation, and mortification;

    f. Reasonable expenses of necessary medical care, treatment and services;

    g. Loss of earnings;

    h. Loss of earnings capacity;

    i. Any and all injuries or damages that are learned through the course of discovery.

47. Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter Defendants, this

Court should order and award additional damages to be allowed so as to satisfy any and all such inadequacies.

48. The actions of Defendant Green-Hernandez as described above were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm and eventual death of Megan. As a result of such intentional conduct, Plaintiff is entitled to punitive damages in an amount sufficient to punish Defendant Green-Hernandez and to deter others from like conduct.

WHEREFORE, Plaintiff respectfully request that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

### COUNT II – MUNICIPAL/SUPERVISORY LIABILITY PURSUANT TO 42 U.S.C. § 1983 – DEFENDANT TROY

49. Plaintiff reincorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

50. Pursuant to 42 U.S.C. § 1983, as well as the Eighth and Fourteenth Amendments to the United States Constitution, Defendant Troy owed Megan certain duties to properly hire, supervise, monitor, and train its employees and officers so as not violate the constitutional rights of individuals, and Megan in particular and as alleged throughout this Complaint, and to take proper measures to report, prevent,

10

or otherwise protect individuals such as Megan in the event that such violations occur.

51. Defendant Troy is liable pursuant to 42 U.S.C. § 1983, in that its policies, procedures, regulations, and customs, or that its failure to enact policies, procedures, regulations, and customs, such that those policies, procedures, regulations, and customs caused and were the driving force behind the violation of Megan's constitutional rights as alleged throughout this Complaint.

52. Defendant Troy was deliberately indifferent to Megan's constitutional and other rights by failing to promulgate a policy and failing to properly train its personnel and employees to prevent the violation of individuals' constitutional rights, and in particular to provide or facilitate prompt and immediate medical attention to Megan and/or transport to a hospital in response to a known risk of serious harm due to serious medical needs.

53. Defendant Troy was deliberately indifferent to Megan's constitutional and other rights by failing to supervise its personnel and employees when they knew of specific and repeated acts violations of individuals' constitutional rights.

54. The specific policies and procedures of Troy required that its officers and lockup personnel must be aware that intoxicated prisoners present an increased risk for serious medical problems, including death, and that personnel need to be

11

alert for indicators that a prisoner may be at risk to suffer a serious medical problem due to their intoxicated state, which includes vomiting.

55. The specific policies and procedures of Troy required that when a prisoner is deemed to be a medium or high security, medical or psychological risk, a PSA shall conduct a physical observation of that prisoner as often as possible and at least once every fifteen (15) minutes.

56. Defendant Troy failed to properly train its officers and/or its PSAs regarding those procedures and such failure was the driving force behind the violation of Megan's constitutional rights as alleged throughout this Complaint.

57. Defendant Troy through its policies, procedures, regulations, or customs, or lack thereof, breached its duties, which amounted to reckless and/or deliberate indifference toward the general public, and toward Megan specifically, in the following ways including, but not limited to:

   a. Failing to properly train its employees regarding responding to and providing medical care in response to a known serious medical need of prisoners and/or detainees;

   b. Employing and retaining improperly trained employees;

   c. Failing to enact or provide training on proper policies regarding responding to and providing medical care in response to a known serious medical need of prisoners and/or detainees;

   d. Failing to enact or provide training on proper policies;

e. Failing to have proper policies, procedures, and training regarding responding to and providing medical care in response to a known serious medical need of prisoners and/or detainees;

f. Failure to hire and/or retain employees whose character and personality would not pose a potential violation individuals' constitutional rights;

g. Failure to adequately monitor the conduct and behavior of its officers;

h. Sanctioning the conduct as alleged throughout this Complaint by failing to adequately discipline or terminate employees who are known to have engaged in such conduct;

i. Having a custom, policy, or practice of tolerating the violation of constitutional rights by employees;

j. Ratifying the violation of constitutional rights by employees;

k. Other acts and omissions which may be learned through the course of discovery.

58. The above-enumerated actions, failures, and/or inactions constituted deliberate indifference to the violation of Megan's constitutional rights by employees of Defendant Troy, including, but not limited to, those alleged in this Complaint.

59. As a direct and proximate result of the actions, failures, and/or inactions as set forth herein, Megan suffered damages, both economic and non-economic, severe physical, psychological, emotional injuries, and ultimately death, and those damages include, but are not limited to, the following:

      a. Physical pain and suffering;

      b. Mental anguish;

      c. Fright and shock;

      d. Denial of social pleasure and enjoyments;

      e. Embarrassment, humiliation, and mortification;

      f. Reasonable expenses of necessary medical care, treatment and services;

      g. Loss of earnings;

      h. Loss of earnings capacity;

      i. Any and all injuries or damages that are learned through the course of discovery.

60. Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter Defendants, this Court should order and award additional damages to be allowed so as to satisfy any and all such inadequacies.

61. The actions of Defendants as described above were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm and eventual death of Megan. As a result of such intentional

conduct, Plaintiff is entitled to punitive damages in an amount sufficient to punish Defendants and to deter others from like conduct.

WHEREFORE, Plaintiff respectfully request that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

### COUNT III – GROSS NEGLIGENCE – DEFENDANT GREEN-HERNANDEZ

62. Plaintiff reincorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

63. Defendant Green-Hernandez owed Megan a duty to act in a reasonable manner and not in a grossly negligent manner, to act prudently and with reasonable care, and to avoid conduct to create or increase the likelihood that Megan would suffer harm or death.

64. Defendant Green-Hernandez was grossly negligent and acted so recklessly as to demonstrate a substantial lack of concern that harm or death would result, and/or acted in a unnecessary or willful or wanton manor toward Megan, and was indifferent to the risk that Megan would be severely injured from being denied prompt and immediate medical and/or transport to a hospital in response to a known risk of serious harm due to serious medical needs.

65. Defendant Green-Hernandez thus breached the above duties in a number of ways.

66. Defendant Green-Hernandez's conduct as set forth above was the proximate cause of Megan's harm and eventual death.

67. The most immediate, efficient, and direct cause of Megan's harm and eventual death was Defendant Green-Hernandez's failure to provide prompt and immediate medical and/or transport to a hospital in response to a known risk of serious harm due to serious medical needs.

68. Megan's harm and eventual death was a foreseeable result of Defendant Green-Hernandez's failure to provide prompt and immediate medical and/or transport to a hospital in response to a known risk of serious harm due to serious medical needs.

69. Defendant Green-Hernandez is not entitled to immunity under Michigan law.

70. As the direct and proximate result of Defendant Green-Hernandez's gross negligence, Megan suffered damages, both economic and non-economic, severe physical, psychological, emotional injuries, and ultimately death, and those damages include, but are not limited to, the following:

    a. Physical pain and suffering;

    b. Mental anguish;

    c. Fright and shock;

    d. Denial of social pleasure and enjoyments;

    e. Embarrassment, humiliation, and mortification;

    f. Reasonable expenses of necessary medical care, treatment and services;

    g. Loss of earnings;

    h. Loss of earnings capacity;

    i. Any and all injuries or damages that are learned through the course of discovery.

WHEREFORE, Plaintiff respectfully request that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

                              Respectfully submitted,

                              JOHNSON LAW, PLC
                              Attorneys for Plaintiff
                              By: /s/ *David S. Shiener*
                              DAVID S. SHIENER (P78608)
                              535 Griswold Street, Suite 2632
                              Detroit, Michigan 48226
                              (313) 324-8300
                              dshiener@venjohnsonlaw.com

Dated: November 29, 2021

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DIVISION OF MICHIGAN**
**SOUTHERN DIVISION**

STEVEN GILLMAN, as Personal
Representative of the ESTATE OF
MEGAN ANN MILLER, Deceased,              Case No.
                                         Hon.
    Plaintiff,

v

CITY OF TROY and JULIE GREEN-HERNANDEZ,

    Defendants.

---

VEN R. JOHNSON (P39219)
JEFFREY T. STEWART (P24138)
DAVID S. SHIENER (P78608)
**JOHNSON LAW, PLC**
Attorneys for Plaintiff
535 Griswold, Suite 2632
Detroit, Michigan 48226
(313) 324-8300
dshiener@venjohnsonlaw.com

---

**PLAINTIFF'S JURY DEMAND**

---

NOW COMES Plaintiff STEVEN GILLMAN, as Personal Representative of the ESTATE OF MEGAN ANN MILLER, Deceased, and hereby demands a trial by jury in the above-captioned matter.

                                                Respectfully submitted,

                                                JOHNSON LAW, PLC
Attorneys for Plaintiff
By: /s/ *David S. Shiener*
DAVID S. SHIENER (P78608)
535 Griswold Street, Suite 2632
Detroit, Michigan 48226
(313) 324-8300
dshiener@venjohnsonlaw.com

Dated: November 29, 2021